IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ISABEL DELEON, *on behalf of herself and all similarly situated individuals*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 3:25-cv-818 |
| BH MANAGEMENT SERVICES, LLC, | ) ) ) |
| Defendant. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Isabel DeLeon, on behalf of herself and all other similarly situated individuals, files this Class Action Complaint against Defendant BH Management Services, LLC ("BH Management"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, treble, and statutory damages, costs, and attorneys' fees for Defendant's violations of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 36.96.1, *et seq*.

2. Plaintiff's claims stem from BH Management's fraudulent and unlawful conduct in imposing and collecting pest control ("Pest Fee"), common area gas and electricity ("Common Area Utility Fees"), and a utility service fee ("Service Fee") (collectively, the "Disputed Fees") that BH Management represents as necessary for each tenant to receive pest-control services, properly maintained common spaces, and utilities in its multi-unit apartment complexes but that

1

are in fact a profit generator that does not cover the services BH Management claims to be covered and are not lawful under Virginia law in any event.

3.  BH Management's conduct is part of an increasingly common practice by landlords and property management firms across the country to impose additional so-called "junk fees" on unsuspecting tenants that are supposed to be covered by the tenants' monthly rent. Landlords and property managers like BH Management here utilize these fees in lieu of advertising the true cost of renting from them so that they can advertise units at a lower sticker price, only to generate additional profits through backdoor fees after the prospective tenant has been lured in.  To come up with reasons for these fees, landlords and property managers represent to tenants that the fees are merely to cover the costs of specific services, but in reality they do not intend to in fact provide those services at the advertised cost and, worse, conceal from their tenants that they are already required to provide those services under state law.

4.  As federal data has shown, these fees add up to create a disproportionate burden on Virginians—particularly low- and middle-income Virginians—that deprives them of funds to pay other expenses, to save for a home, and to move up the socioeconomic ladder.[1]

5.  BH Management was well aware at the time it implemented the Pest Fee and Common Area Utility Fees in Plaintiff's and the class members' lease agreements that its clients—the landlords—bore the sole burden of providing pest-free premises to their tenants and

---

[1] See *Federal Data Shows Many Virginians are 'Rent Burdened'*, Va. Public Radio (Sept. 24, 2025), https://www.wvtf.org/news/2025-09-24/federal-data-shows-many-virginians-are-rent-burdened; *Nearly Half of Renter Households are Cost-Burdened, Proportions Differ by Race*, U.S. Census Bureau (Sept. 12, 2024), https://www.census.gov/newsroom/press-releases/2024/renter-households-cost-burdened-race.html (last visited Oct. 1, 2025).

maintaining the building's common areas in fit condition, including with adequate electricity and heating. Indeed, both VRLTA and the Virginia Court of Appeals have explicitly held that such fees cannot be charged to tenants. *See* Va. Code § 55.1-1220(A) (requiring landlords to, in relevant part, "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition"; "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition"; and "maintain in good and safe working order and condition all electrical, plumbing, sanitary, hearing, ventilating, air-conditioning, and other facilities and appliances . . . supplied or required to be supplied by him"); *Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-1220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

6.  BH Management was likewise well aware that Virginia law permits it to charge and collect only sufficient service charges to cover its "actual costs of administrative expenses and billing charged to the residential building owner, manager, or operator by a third-party provider of such services . . . ." Va. Code 55.1-1212(C)-(D).

7.  Notably, missing from the lease's section outlining relevant sections of the Virginia Residential Landlord Tenant Act, is a disclosure that Plaintiff and her similarly situated tenants at BH Management properties are already entitled to the rights and services that the lease agreement conditions upon payment of the Pest Fee and Common Area Utility Fees and that the landlord bears the burden under Virginia Law to provide.

8. Further adding to the deceptive nature of the lease conditions, BH Management charges a flat rate for the Pest Fee when in fact, upon information and belief, it does not incur expenses from its pest control vendor commensurate with the Fee.

9. Indeed, Plaintiff has received pest control services only intermittently every few months, even though she and her co-tenants have paid $3 a month for the service.

10. Instead of providing the services that BH Management claims in its leases are covered by the Pest Fee, BH Management in fact uses the fees to generate additional profit for itself and its landlord clients while shifting the burden of providing a pest-free and habitable living space onto its tenants.

11. Likewise, instead of charging a Service Fee for the actual costs charged to it by the third-party provider of the utilities in Plaintiff's and the putative class members' units, upon information and belief, BH Management in fact charges a flat fee that generates additional profit for BH Management and its landlord clients, while covering very little if any of the actual costs charged to it by the utility providers.

12. Thus, BH Management engaged in and continues to engage in and profit from a scheme that induces the tenants in the properties it manages into a residential lease that misrepresents their rights to certain services related to the warrant of habitability—guaranteed under Virginia Law—and forces them to waive such rights. Living with the harm of having paid, and continuing to pay, BH Management's deceptive monthly fees, Plaintiff is forced to bring this lawsuit to seek relief for BH Management's ongoing violations of the VCPA.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over all Counts under 28 U.S.C. § 1332(d) because Plaintiff and putative class members (Virginia) and Defendant BH Management Services, LLC (Iowa) are each citizens of different states and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Under 28 U.S.C. § 1332(d)(6), "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." The test for determining whether the amount in controversy is "the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally,* F.2d 568, 569 (4th Cir.1964)). Statutory damages "are properly includable in the calculation of the jurisdictional amount," including increased damages for willful violations. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 735 (4th Cir. 2009). Attorney's fees may also be included in the amount in controversy when recoverable under the asserted statute. *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202 (1933) (holding that where a state statute provides for the award of attorney's fees, those fees can be considered as part of the amount in controversy).

14. Here, BH Management has at least 2,992 units among its 10 Virginia properties, meaning that there are at least 2,992 putative class members (before counting any co-tenants in each unit) in Count One, which seeks relief for all persons who signed a lease with landlords of Virginia properties managed by BH Management.

15. In Count One, which alleges violations of the VCPA, Plaintiff and each class member are entitled to at least $1,000 per month for each month that BH Management willfully collected the Disputed Fees, which, upon information belief, have been charged in full or in part

for a least two years. This entitles Plaintiff and the class members to at least a total of $24,000 per class member as of the date of this Complaint, or $71,808,000 ($24,000 x 2,992 class members) for the class, which will continue to increase by $1,000 per class member each month that this case proceeds and additional Disputed Fees are collected. Va. Code § 59.1-204; *see Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (holding future damages may be included in this calculation when "'a right to future payments. . .will be adjudged in the present suit.'" (quoting 1 Moore's Federal Practice P 0.93(5. 3) at 904)); *Goff v. Jones*, 47 F. Supp. 2d 692, 695 (E.D. Va. 1999) (Lee, J.) (future damages could be considered in deciding amount in controversy). This is before considering the attorney's fees that the Court could award under the VCPA. Va. Code § 59.1-204(B).

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division, where Plaintiff resides and property owned and/or managed by BH Management is located.

## PARTIES

17.     Plaintiff Isabel DeLeon is a natural person residing in this Division and District.

18.     Defendant BH Management is a limited liability company incorporated in Delaware with its principal place of business in Utah.

19.     Defendant BH Management Services, LLC is a limited liability company incorporated in Iowa with its principal place of business in Iowa. Plaintiff's apartment complex, Tuckahoe Creek Apartments f/k/a Honey Tree Apartments is advertised, operated, managed, and leased by BH Management.

20. Defendant BH Management is a "supplier" under the VCPA because it is a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes. Va. Code § 59.1-198. BH Management is the entity that collects the Disputed Fees, and it is liable for its misrepresentations to Plaintiffs and the putative class members that they owe, and that it can collect, such fees.

## FACTS

### *Plaintiff DeLeon's Lease Agreement*

21. Plaintiff DeLeon is a resident of Henrico, Virginia.

22. She resides at the Honey Tree Apartments, which BH Management renamed Tuckahoe Creek Apartments after taking over the complex in 2012.

23. Ms. DeLeon has lived in the Honey Tree Apartments since 2005.

24. Relevant here, during the class period, Ms. DeLeon signed a Lease with Honey Tree in May 2024 (the "2024 Lease").

25. Among the many provisions in the 2024 Lease were a Pest Fee and an agreement pay all gas and electric for common areas (the Common Area Utility Fees), in addition to separately paying for her electric and gas with the service provider for her unit.

26. Under the 2024 Lease, BH Management charged and collected from Ms. DeLeon and her co-tenants a $3-per-month "Pest Control Fee."

27. The Property Specific Charges addendum in the 2024 Lease further claimed that BH Management was entitled to collect from Ms. DeLeon a "Common Area Gas" and "Common Area Electric" charge, to cover the gas and electric used to heat and power the

common areas of her community. Pursuant to the Addendum, BH Management charged and collects from Ms. DeLeon and her cotenants a monthly charge for gas and electric that is allocated based on the square footage of each tenant's apartment and the number of occupants in the apartment.

28. Ms. DeLeon renewed her lease in May 2025, which is set to expire in July 2026 (the "2025 Lease").

29. Like the 2024 Lease, the 2025 Lease included Common Area Utility Fees but omitted the Pest Fee, in recognition of the fact that such fee is unlawful under Virginia law pursuant, as recognized in *Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

30. Pursuant to both the 2024 Lease and the 2025 Lease, moreover, BH Management collected and continues to collect a monthly "Service Fee" of $4.25, which under Virginia law is supposed to cover the "actual costs" to BH Management charged by the third-party utility providers at Plaintiff's apartment complex for the utility services to her unit. Instead, upon information and belief, the actual costs to BH Management for providing utilities to Plaintiff's and the putative class members' apartments is far less than $4.25 per unit per month.

### *BH Management's Unlawful and Deceptive Pest Fee and Common Area Utility Fees*

31. BH Management, through its employees, is responsible for providing the Leases to Plaintiff and the putative class members in Count One, and for collecting all amounts allegedly owed under their leases. Upon information and belief, BH Management is responsible

for drafting the terms of the form lease agreements used at all of its properties, including Plaintiffs Leases, which misrepresent to tenants like Plaintiffs that it can collect the Disputed Fees at issue in this lawsuit and that the fees are intended for services that BH Management never intended to provide or to provide at the actual cost to them. BH Management is also directly responsible for publishing to tenants monthly invoices and other correspondence claiming that such fees are duly owed under the terms of their lease agreements.

32. Although BH Management claims that Plaintiffs and others lawfully owed the Disputed Fees, however, Virginia law prohibits BH Management and its landlord customers from collecting either fee.

33. Indeed, the assessment of the Pest Fee directly violates Virginia Law, which prohibits landlords from creating lease provisions that waive the warranty of habitability established by Va. Code § 55.1-220(A). *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

34. Here, BH Management requires its tenants to pay a monthly fee to cover pest-control costs. The imposition of this fee not only violates the Virginia Residential Landlord Tenant Act but also misrepresents the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to a pest-free premises. This conduct is in direct violation of the Virginia Consumer Protection Act. Va. Code § 59.1-200(14).

35. Likewise, although charging its tenants for communal area electricity and gas, the Virginia Residential Landlord Tenant Act requires landlords—not tenants—to "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition" and to "[m]aintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air-conditiong, and other facilities and appliances, including elevators, supplied or required to be supplied by him." Va. Code § 55.1-1220(A)(3) and (4).

36. Although a landlord and tenant may agree that *the tenant*, as a person, "[k]eep all common areas . . . in a clean and structurally safe condition," moreover, Virginia law does not permit a landlord to shift its own costs of doing so onto the tenant—as BH Management has done here. And in any event, Virginia law specifically proscribes landlords from shifting their burden to their tenants to maintain electrical and heating in "good and safe working order and condition."

37. Despite the explicit obligations of Virginia law, of which it was well aware, BH Management knowingly forced Plaintiff and all other tenants at its Virginia properties to waive their right to the warranty of habitability and the Virginia Residential Landlord Tenant Act. BH Management shifted the obligation to maintain a pest-free premises and common areas onto its tenants and profited from the imposition of fees that they had no right to charge.

38. Regardless of the legality of the Pest Fee under Virginia law, moreover, the assessment of such fees is also deceptive for the independent reason that BH Management intentionally misrepresents the purpose and use of such a Fee, which is not intended—and were never intended—to simply cover the costs of the pest control services purportedly being covered

by the Pest Fee, but were in fact an additional profit generator that allowed BH Management to advertise lower rent prices before luring unsuspecting consumers into leases packed with additional, unlawful fees that generated profit for it and its landlord clients.

39. Indeed, although charging Plaintiff and the tenants at Honey Tree a $3-per-month pest fee, upon information and belief, the actual costs of those services is far less than the amount of revenue generated by the Fee.

40. Upon information and belief, BH Management instead imposed the Pest Fee for the purpose of generating additional profit and did not intend—and never intended at the time it had Plaintiff and the class members execute their lease agreements—to provide the promised services for the amount charged. Instead, BH Management intentionally charged fees that were far higher than any costs to them of providing pest control so that they could generate additional profit for their own pecuniary gain.

41. Likewise, although charging a monthly Service Fee for the provision of utilities to Plaintiff's and the putative class members' apartment complexes, upon information and belief, BH Management in fact uses the Service Fee to generate additional profit and does not cover the actual costs to it charged by the third-party utility providers.

42. Indeed, considering the number of units at Plaintiff's apartment complex (388), alone, BH Management collects over $1,600 a month in utility service fees, or nearly $20,000 a year, which is supposed to cover only the actual cost to it of administering the utility services. Va. Code § 55.1-1212. Upon information and belief, the cost to BH Management of administering the utility billing at Plaintiff's and the other class members' apartment complexes is in fact far less than the amounts charged to BH Management.

43. BH Management's misrepresentations of the Disputed Fees were willful. BH Management and its landlord clients stood to rake in thousands in additional revenue and cost savings from tenants to cover costs that should have been covered by their rent and which were the landlords' sole burden to bear under Virginia law. BH Management also profited from the imposition of the Disputed Fees, as the revenues generated by such fees exceeded the actual costs of providing the alleged services that they covered. BH Management thus had a pecuniary incentive to represent to Plaintiff and the putative class members that such fees were collectible, when they explicitly were not under Virginia law.

44. BH Management knowingly forced Plaintiff and its other tenants to assume the its and its landlord clients' obligations to maintain the building's common spaces and a pest-free premises and profited from the imposition of the Disputed Fees that they had no right to charge. They did so solely for their pecuniary gain and without regard to this known harm to their tenants.

**COUNT ONE**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiff against Defendant)**

45. Plaintiff incorporates each of the preceding allegations.

46. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class of which she is a putative class member:

> All persons who: (1) executed a lease within the past two years at a property managed by Defendant BH Management and located in Virginia under which they (2) paid any or all of the Disputed Fees.

47. **Numerosity. Fed R. Civ. P. 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. There are at

least 2,922 class members based on the number of units at BH Management's Virginia properties. The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

48. **Predominance of Common Questions of Law and Fact**. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendant BH Management misrepresented to Plaintiff and the putative class members in their lease agreements that payment of the Disputed Fees was necessary to secure their right to properly maintained common spaces and pest-free premises; (2) whether Defendant BH Management misrepresented to Plaintiff and the putative class members that the Disputed Fees would simply cover the costs of providing pest control and common area gas and electric, when in fact the fees each generated profits for BH Management; (3) whether Defendant BH Management's violations were willful; and (4) the appropriate amount of damages for Defendant BH Management's violations.

49. **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

50. **Adequacy of Representation.** Fed R. Civ. P. 23(a)(4). Plaintiff is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests. She has retained experienced and competent counsel; she intends to

continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

51. **Superiority.** **Fed R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant BH Management's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

52. Defendant BH Management represented in lease agreements drafted and published by it to Plaintiff and the putative class members that they were required to pay a Pest Fee and/or a Common Area Utility Fee as a condition of securing residence at the respective properties and receiving the right to properly maintained common spaces and pest-free premises. The services conditioned upon these fees are basic aspects of suitable living conditions under the warranty of habitability which Plaintiff and the putative class members are guaranteed when entering into a residential lease agreement. Va. Code § 55.1-1200.

53. Additionally, BH Management represented to Plaintiff's and the class members in their lease agreements and tenant ledgers that they owed a Service Fee for the costs to it of administering the utility billing programs at their respective apartment complexes, when in fact it was generating a profit from the Fee in violation of Virginia law. Va. Code § 55.1-1212.

54. Defendant BH Management's lease agreements failed to disclose that Plaintiff and the putative class members were already entitled to the rights that the lease agreement conditions upon payment of the Disputed Fees. Defendant BH Management also failed to disclose that Virginia Law obligates the landlord—not the tenant—to provide properly maintained common spaces and pest-free premises and that they could not assess service fees of more than the actual costs to them of administering the utility billing programs.

55. Additionally, BH Management misrepresented to Plaintiffs and the class members that the Pest Fee would cover pest control services, when in reality, such fees were designed by BH Management to generate additional profit and were intentionally set by them at a price point far higher than the actual cost of the services. At the time it had Plaintiff and the putative class members sign their respective lease agreements, BH Management did not have a present intent to provide the services described in Plaintiff's and the class members' lease agreements at the cost they charged for each fee.

56. Defendant BH Management thus affirmatively misrepresented in the lease agreements with Plaintiff and the putative class members that the payment of a the Disputed Fees was required to receive the benefit of pest control services, properly maintained common spaces, and utilities and/or that such fees would simply cover the actual costs of the described services, when in fact they were designed to generate additional profit for BH Management.

57. BH Management willfully and intentionally misrepresented the fact that the payment of additional fees were necessary to obtain such services because they knew that such a practice is unlawful, and it wanted to conceal its and its landlord customers' violations of the Virginia law and to generate additional revenues at their properties.

58. "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")). The elements "of the two claims are [therefore] different." *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200. Va. Code § 59.1-199(5). With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages. *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.). There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations. *See id.*

59. Here, Plaintiff and the putative class members relied on the representation that they were required to pay the Disputed Fees to obtain pest control services and enjoy properly maintained common spaces and utilities when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements. They also relied on the representation that the fees covered the actual costs to BH Management and their respective

16

landlords of providing the described services. Had BH Management disclosed that the landlords at its properties could not collect such fees and were already obligated to provide pest-free and clean common areas, or had it disclosed that the fees were higher than the actual costs of the services being provided, Plaintiff and the putative class members would not have agreed to pay the Disputed Fees, which they believed at were necessary to access pest control services and enjoy properly maintained common spaces.

60. Plaintiff and the putative class members have been damaged by Defendant BH Management's misrepresentations, including through payment of amounts that they believed were necessary to secure their right to pest-free premises and properly maintained common spaces that they were already entitled to under Virginia Law and that were instead retained by Defendant BH Management as profit.

61. Defendant BH Management has thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. Va. Code § 59.1-200(14).

62. Defendant BH Management's violations were willful. BH Management knew at the time it imposed the Disputed Fees that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing pest control services and maintaining common spaces in good condition. BH Management also wanted to deliberately conceal the scheme, as they knew it violated the VRLTA and that if tenants knew the fees could not be assessed or were in fact for a profit-generating purpose, the tenants would refuse to pay the fees or otherwise organize against their imposition. BH Management concealed and

willfully misrepresented the true purpose of the Fees for its pecuniary gain, as the fees would help its bottom line and the bottom line of its customers (i.e., the landlords).

63. Plaintiff and the putative class members are thus entitled to damages for each month in which BH Management collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if BH Management's conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if BH Management's conduct was willful.  Va. Code § 59.1-204.

64. Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

65. And Plaintiff and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code §§ 59.1-203(C) and 59.1-205.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against BH Management; injunctive relief; their attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

        Respectfully submitted,
        **PLAINTIFF**

        By: _/s/ Kristi C. Kelly_
        Kristi C. Kelly, VSB #72791
        Andrew J. Guzzo, VSB #82170
        Casey S. Nash, VSB #84261
        J. Patrick McNichol, VSB #92699
        Matthew G. Rosendahl, VSB #93738
        **KELLY GUZZO, PLC**
        3925 Chain Bridge Road, Suite 202

           Fairfax, VA 22030
           (703) 424-7572 – Telephone
           (703) 591-0167 – Facsimile
           Email: kkelly@kellyguzzo.com
           Email: aguzzo@kellyguzzo.com
           Email: casey@kellyguzzo.com
           Email: pat@kellyguzzo.com
           Email: matt@kellyguzzo.com

*Counsel for Plaintiff*